ROBERT VANDEVIER, Plaintiff-Appellant, v. MULAY PLASTICS, INC., Defendant-Appellee.

First District (5th Division)   No. 84—0765.

Opinion filed August 2, 1985.

Joseph B. Platt, of Glenview, for appellant.

Floyd A. Mandell, of Katten, Muchin, Zavis, Pearl & Galler, of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Robert Vandevier, a manufacturer's representative, brought suit against the defendant, Mulay Plastics, Inc., for commissions due on the sale of parts manufactured by defendant and sold to customers solicited and serviced by plaintiff. At the conclusion of plaintiff's case, the trial court granted defendant's motion for a directed verdict. Plaintiff appeals the trial court's ruling, contending that the decision was against the manifest weight of the evidence. Specifically, plaintiff contends that all of the evidence presented supports the conclusion that defendant agreed to pay plaintiff a 5% commission on jobs he solicited for as long as these jobs ran and that this obligation was never terminated or modified. We affirm.

In 1971, the parties entered into an oral agreement. Defendant agreed to pay plaintiff a commission on the sale of parts manufactured by the defendant to customers solicited and serviced by the plaintiff. The terms of this oral agreement concerning the percent and duration of the commission payments due plaintiff constitute the subject of this dispute between the parties.

Plaintiff testified that Sam Mulay (Mulay), president of defendant corporation, promised that plaintiff would receive a 5% commission on all accounts he solicited and serviced and that he was to receive these commissions as long as the parts ran. Plaintiff's deposition testimony, however, indicated that the agreement provided that his commissions would terminate when he stopped servicing accounts for the defendant. Plaintiff worked as a manufacturer's representative (rep) for defendant until 1978. During this seven-year period, plaintiff received commission checks ranging from 1% to 5%, the majority of which were for less than 5%. Plaintiff complained about his commissions regularly, but Mulay's only response to his complaints was "take it or leave it." He cashed all commission checks but one and continued to solicit new business and to service existing accounts throughout this period. In July 1978, Mulay terminated the relationship with plaintiff. His final

commission check was issued in August 1978. After his discharge, plaintiff no longer serviced any accounts for the defendant.

Mulay, called as an adverse witness, contended that he never agreed to a 5% commission. He told the plaintiff that it would be impossible to guarantee a 5% commission on any account, that the commissions paid would depend on the price he was able to secure from the customer and that plaintiff's commission could vary from 5% on down to 1%. Plaintiff never complained about his commission checks. Mulay stated that there was no agreement concerning how long commissions would be paid. In July 1978, Mulay told the plaintiff that he was not servicing the accounts properly and that he thought it best that plaintiff no longer represent defendant.

William Anderson, also a manufacturer's representative, testified that the custom in the industry is to pay reps a 5% commission. This commission is paid as long as a particular job runs. During cross-examination, Anderson stated he had never been a rep for defendant and he was not familiar with its practice concerning compensation to reps. He gathered his information on the industry custom by talking with six personal friends who are reps.

Another manufacturer's representative, John Johnston, testified on plaintiff's behalf. Johnston stated that it is customary for reps to receive 5% commissions which are usually paid as long as a specific job is run by a manufacturer. He stated on cross-examination that he has accepted commissions of less than 5%. He was not aware of defendant's policy regarding commissions paid to reps. During redirect examination, Johnston stated that in the absence of an agreement providing for commissions after termination, it is customary to receive commissions from 90 days after termination up to the length of production of a part for a customer.

A third manufacturer's representative, Robert Bishop, testified that 5% is the standard commission rate for reps. As long as the parts are produced or as long as the customer places orders with the manufacturer, the rep continues to receive commissions. Commissions due after termination are not subject to a variation of this custom unless agreed to by both parties. On cross-examination, Bishop stated that there is nothing to prevent the parties from contracting for less than 5% commission. If he did not agree with a preposed reduction in his commission, he would pull his accounts and take them to another manufacturer.

Diane Peszynski, a former employee of defendant corporation, testified that while in defendant's employ she typed a memorandum setting the amount of commissions to be paid the plaintiff on five particu-

lar jobs. Per instructions given to her, she typed in a 5% commission due on these jobs. That figure was later scratched out by someone other than the witness and a 5% commission was written in next to four of the jobs and a 3% commission was indicated for the fifth job. On cross-examination, the witness stated she could not remember whether the 5% figure which was crossed out was a typographical error.

At the conclusion of plaintiff's case, the defendant moved for a directed finding on the grounds that plaintiff had not presented a *prima facie* case. The trial court granted the motion noting that it had considered all the evidence, passed on the credibility of the witnesses, drawn reasonable inferences from the testimony and considered the weight and quality of the evidence. Plaintiff appeals the trial court's ruling.

OPINION

■■ Plaintiff contends that the trial court erred in granting defendant's motion for a directed finding at the close of plaintiff's case. The decision of the trial court granting judgment at the close of plaintiff's case will not be reversed unless it is contrary to the manifest weight of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.) When ruling on a motion for judgment at the close of plaintiff's case in a nonjury case, the court must determine whether plaintiff has made a *prima facie* case by presenting at least some evidence on every essential element of his cause of action. (81 Ill. 2d 151, 154, 407 N.E.2d 43.) If plaintiff fails to do so, the defendant is entitled to judgment as a matter of law. (81 Ill. 2d 151, 154-55, 407 N.E.2d 43.) When a *prima facie* case has been presented, the court must consider all of the evidence, including evidence favorable to the defendant, pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and quality of the evidence to determine if a *prima facie* case still exists. (81 Ill. 2d 151, 154, 407 N.E.2d 43.) After the weighing process, if there is sufficient evidence to establish that plaintiff's *prima facie* case remains, the court should deny the defendant's motion and proceed as if the motion had not been made. 81 Ill. 2d 151, 155, 407 N.E.2d 43.

Plaintiff argues that he presented some evidence on all of the essential elements of a breach of contract action. He maintains that after the weighing process, a *prima facie* case still remains because there was no evidence that the parties agreed to a commission of less than 5% or that defendant's obligation to pay commissions was terminated. Defendant contends that plaintiff did not present a *prima facie* case because he failed to establish the existence of an enforceable obligation

between the parties. Specifically, defendant contends that there was no meeting of the minds between the parties regarding the percent of commission or the duration of the commission payments, both material terms of the contract.

■ In a breach of contract action, plaintiff must establish an offer and acceptance, consideration, the terms of the contract, plaintiff's performance of all contractual conditions required of him, the defendant's breach of the terms of the contract and damages resulting from the breach. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028.) Plaintiff shoulders the burden of proving every material term of the contract. (*Jaffe Commercial Finance Co. v. Harris* (1983), 119 Ill. App. 3d 136, 141, 456 N.E.2d 224.) It is well established that in order for an oral contract to be binding and enforceable, its terms must be definite and certain. (*O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.* (1977), 51 Ill. App. 3d 11, 14, 365 N.E.2d 316.) Where it appears that the language used or the terms proposed are understood differently by the parties, there is no meeting of the minds and no contract exists between the parties. *Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 304, 371 N.E.2d 3; *Richton v. Farina* (1973), 14 Ill. App. 3d 697, 704, 303 N.E.2d 218.

■ It is apparent from the testimony of the plaintiff and Mulay that the percent of commission to be paid the plaintiff was understood differently by the parties. Plaintiff understood the commission to be 5% on all jobs, while Mulay thought the commission could be from 1% to 5% depending on the costs of each particular job. Where the terms of the contract are unclear, or where there is an oral agreement, a meeting of the minds may be inferred from the construction the parties themselves give the contract, as evidenced by their actions. (*Laff v. John O. Butler Co.* (1978), 64 Ill. App. 3d 603, 614, 381 N.E.2d 423, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 88; *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.* (1977), 51 Ill. App. 3d 11, 14, 365 N.E.2d 316; see also *Nagle v. General Merchandising Corp.* (1978), 58 Ill. App. 3d 344, 374 N.E.2d 1137 (conduct of parties established percent of commission different than commission provided for in written contract).) Here, over a seven-year period, plaintiff received commissions ranging from 1% to 5%, most of which were for below 5%. These commissions were determined by Mulay on a job-by-job basis. Although he stated that he complained each time he received a commission check for under 5%, plaintiff cashed each check except the last one and continued to solicit new business for defendant. Upon consideration of all of this evidence, we think that plaintiff, by these

actions, established that the percent of commissions to be paid was in accordance with Mulay's understanding, that is, that there was no guarantee of 5% commission and that plaintiff's commission could vary from 1% to 5%.

While establishing a meeting of the minds on the percent of commission to be paid plaintiff, these same actions preclude plaintiff from now claiming a breach of contract. According to the principles of waiver and estoppel, a party to a contract may not lull another party into a false assurance that strict compliance with a contractual duty will not be required and then sue for noncompliance. (*Graubremse GMBH v. Berg Manufacturing & Sales Co.* (7th Cir. 1969), 417 F.2d 1201, 1204 (quoting *Stewart v. Meyers* (7th Cir. 1965), 353 F.2d 691, 694); *Botti v. Avenue Bank & Trust Co. of Oak Park* (1982), 103 Ill. App. 3d 1052, 1054, 432 N.E.2d 295.) The evidence concerning plaintiff's complaints about his commission checks is conflicting. Although plaintiff testified that he regularly complained about his commission checks, Mulay could not remember plaintiff complaining. In our opinion, plaintiff's cashing the commission checks and continuing to solicit business on behalf of a company he thought was breaching its agreement with him over a seven-year period constitute a waiver of his claim against the defendant. We conclude that plaintiff acquiesced in the payment of commission checks for less than 5% and is estopped to now assert that defendant should have paid a 5% commission on all jobs.

■ With regard to the duration of the commissions, plaintiff contends that the parties agreed that the commission was to continue as long as the jobs solicited by the plaintiff were being produced and sold and that defendant had no legal right to dismiss him without cause. Defendant argues that because Mulay testified that the parties did not discuss this term of the contract, there was no meeting of the minds and, therefore, no contract. At trial, plaintiff stated that he and Mulay agreed that he was to receive commissions as long as the jobs he solicited ran. However, in his deposition testimony introduced at trial, he stated that he agreed to receive commissions only while he continued to service customer accounts. Plaintiff did not service any accounts after his dismissal in July 1978. Plaintiff argues further that the testimony of the three reps established the industry standard that commissions are to continue while a part is still in production. Each of these experts, however, had limited knowledge of what commissions other reps were receiving. They also admitted to being unfamiliar with defendant's procedures. In our view, plaintiff presented some evidence on this term of the agreement, but after weighing all of the evidence,

the trial court could properly have found that plaintiff failed to establish that even he himself thought the commissions were to be paid as long as parts ran.

Plaintiff contends that this employment relationship is not an at-will relationship but rather is one that is governed by the parties' agreement. He argues that defendant agreed to pay him commissions as long as he serviced existing accounts and solicited new business. He also argues that defendant, therefore, was not free to disregard this agreement and dismiss him without cause.

Generally, an employment agreement is formed when one party promises to render services in exchange for the other party's promise to pay wages. (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 600, 440 N.E.2d 998.) If the agreement does not specify a definite duration, it will last for as long as it is mutually satisfactory and either employer or employee may terminate the employment at will without liability for breach of contract. (109 Ill. App. 3d 596, 600, 440 N.E.2d 998.) The right to terminate an at-will employment relationship, however, is subject to the provisions of any applicable contract or statute. (*Pleasure Driveway & Park District v. Jones* (1977), 51 Ill. App. 3d 182, 190, 367 N.E.2d 111.)

We agree with plaintiff's argument that defendant may not disregard the agreement and dismiss him without cause, contrary to an at-will situation. Our review of the record, however, reveals that there was some basis for plaintiff's discharge. Mulay testified that in July 1978, he told the plaintiff that he was not servicing the accounts properly and that he thought it best that plaintiff no longer represent defendant. The plaintiff's satisfactory performance of his duties was implicit in the employment relationship and, according to Mulay's testimony, his performance was unsatisfactory. Accordingly, there was cause for plaintiff's discharge.

We find that while plaintiff initially established a *prima facie* case for breach of contract, upon weighing the evidence and considering the evidence favorable to the defendant, the trial court correctly found that a *prima facie* case no longer remained. The trial court's decision was not against the manifest weight of the evidence. For these reasons discussed in this opinion, we affirm the judgment of the trial court.

Affirmed.

LORENZ and PINCHAM, JJ., concur.