VLASTA MELICHAREK, Plaintiff-Appellant, v. CARSON PIRIE SCOTT AND COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—90—1455

Opinion filed June 12, 1991.

Kenneth E. North & Associates, of Glen Ellyn (Kenneth E. North and Kathleen M. Smith, of counsel), for appellant.

Paul Armstrong, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Vlasta Melicharek, brought this action in the circuit court of Cook County, alleging that defendant, Carson Pirie Scott & Company, had wrongfully discharged her from its employ in violation of a contract between plaintiff and defendant.

Plaintiff claims that the employee handbook distributed by defendant created enforceable contract rights and that the defendant breached that contract by plaintiff's wrongful discharge.

Defendant asserts that no contract is created under the guidelines of *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, and that, in any event, plaintiff's discharge was appropriate even if a contract had been established.

At the conclusion of plaintiff's case in chief at a bench trial, the court granted defendant's motion for a directed finding, concluding: (1) the employee handbook distributed by defendant and the surrounding factors relative to it did create a contract between the parties; however, (2) the discharge of plaintiff was an action appropriate within the contemplation of the agreement and not wrongful.

We agree with the trial court's analysis and we affirm.

Plaintiff, who was the only witness testifying in the case, was employed by defendant from August 1956 until June 1976. At the time of her discharge, she was the manager of a branch store at the Prudential Plaza in Chicago, Illinois. She testified that she had received an employee handbook at the time of her employment in 1956 that was similar, but not identical, to the 1975 employee handbook that had been received in evidence. She acknowledged that defendant periodically revised its handbooks and that there were provisions with respect to probation and termination contained in these handbooks.

The Carson Pirie Scott handbook provides information on issues such as vacation time, insurance, medical needs, discount buying rates for employees, name badges, security procedures, smoking restrictions, pension plan, as well as store policy regarding the demeanor expected of employees "on the floor" with customers.

The handbook also included material on "probation and termination" and provided, *inter alia*:

> "Rules and regulations are necessary in every successful business and when broken some sort of disciplinary action is the result, ranging from a simple reprimand to termination. In the preceding pages we have covered some of the basic Policies and Rules of the company which you must know and understand.

The following is a list of offenses which will result in IMME-DIATE DISMISSAL.

1. Improper handling of Company money."

The handbook then describes 15 other violations for which there may be immediate dismissal, before continuing in a new paragraph:

"Violation of any of the following will result in a WRITTEN WARNING INTERVIEW followed by DISMISSAL if necessary. (In no case will a written warning be required during the 90 day probationary period.)"

The handbook then identifies 10 minor offenses that warrant a written warning interview.

Two other employees worked with plaintiff at the Prudential Plaza branch although plaintiff was responsible for counting money at the close of each business day, locking the money in a safe and depositing the envelope at the Mid-America National Bank on the following morning. Occasionally, the plaintiff delegated this responsibility to the assistant manager.

On June 16, 1976, the receipts were not tallied, but were placed in the store safe. At 9:30 a.m. on the following day, the plaintiff counted the money and placed it into a money pouch for deposit, placed the pouch in the locked compartment in the store room and instructed the assistant manager to make the necessary bank deposit.

Plaintiff then left the store at 10:00 a.m. to attend a business meeting at defendant's State Street store. She returned some hours later and was advised by the assistant manager that the money was missing.

Plaintiff instructed the assistant manager to inform the security department of the missing funds, did not talk to security officers herself and then left the premises on that day earlier than was usual.

On June 18, 1976, plaintiff was questioned by her supervisors and representatives of defendant's security department. Thereafter, she submitted to a lie detector test, but the results were inconclusive. Plaintiff then declined to allow defendant to review her bank account records.

On June 23, 1976, plaintiff was advised that she would be held responsible for the missing funds and was given the option of resignation or involuntary dismissal. Plaintiff refused to resign voluntarily and was thereafter dismissed from employment by defendant.

The issues considered on appeal are: (1) Did the employee handbook create a contract binding defendant to a particular procedure for terminating plaintiff's employment, and (2) if so, did the manner in

which plaintiff was terminated violate the provisions of the employee handbook?

Plaintiff asserts that the record does not indicate that she was guilty of "improper handling of company money" which would have given reason for immediate dismissal.

■ An employee handbook or other policy statement may create enforceable contractual rights if the traditional requirements for contract formation are present. In *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, the Illinois Supreme Court set out the criteria:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed."

■ After examining the specific provisions set out in the handbook and considering plaintiff's testimony with regard to commencement of her employment, we agree that the handbook and surrounding facts create an enforceable contract and that the *Duldulao* requirements have been satisfied. The handbook contains clear and definitive statements regarding salaries, lunch hours, vacation pay, insurance, sick pay, employee discounts, probation and termination. According to *Duldulao*, these statements are clear enough to have caused plaintiff to reasonably believe that an offer has been made. The statements have been disseminated in such a manner, by way of the handbook, so that the plaintiff was aware of their contents and reasonably believed them to be an offer. Plaintiff accepted the offer by commencing or continuing to work after learning of the contents of the handbook.

If *Duldulao* had been our supreme court's last word on this matter, this case would be extremely close. The handbook in *Duldulao* was exacting in the clarification of employees' rights and provided progressive disciplinary procedures before an employee might be discharged. In *Duldulao*, the handbook provided "permanent employees could only be terminated with proper notice and investigation," and "are never dismissed without prior written admonitions." (*Duldulao*,

115 Ill. 2d at 486.) Except in the case of extremely serious offenses, the handbook required three warning notices before a permanent employee could be dismissed.

Although the Carson's handbook does not set out that kind of precise process, the Illinois Supreme Court has recently had the opportunity to consider an employee's manual containing language similar to the Carson's handbook. (*Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, *rev'g* (1989), 189 Ill. App. 3d 450.) In *Mitchell* the handbook provided "violation of any of the following policies will lead to disciplinary action, up to and including dismissal." A later reference indicated that all time cards were required to reflect dates and times worked. The employee had incorrectly stated his hours on a time card.

After determining that the *Duldulao* requirements had been met with respect to the formulation of a contract, the *Mitchell* court determined that the remedial portions of the handbook which related to the employee's allegedly inadvertent error in preparation of the time card was not necessarily "other misconduct" within the meaning of the language of the handbook and that as such a jury would have to decide whether plaintiff's actions constituted "misconduct" rather than by summary judgment.

The Carson's manual has been drafted with greater clarity and detail than the Jewel Company manual in *Mitchell*. In *Mitchell* the supreme court reversed this court, believing that it was a matter for the jury to determine whether the incorrect notation on the time card was inadvertent or intentional and whether such intentional act, if that be the case, was "other misconduct" under the provisions of the Jewel handbook.

■ Generally, employers may terminate employees at will and the mere distribution of an employment manual does not necessarily alter that rule. In *Duldulao, Mitchell* and here, the employers have reserved the right to terminate probationary employees at will and have made a separate category for other employees.

Accordingly, an employer's decision to provide its work force with employee manuals may create enforceable contractual rights. This case and *Mitchell* are distinguishable from two similar cases recently decided by this court. (*Semerau v. Village of Schiller Park* (1991), 210 Ill. App. 3d 493; *Chesnick v. Saint Mary of Nazareth Hospital* (1991), 211 Ill. App. 3d 593.) In those two cases, regarding the issue of whether an employee's manual creates a contract, the defendant employers had clear language disclaiming the manual to be a contract.

In *Semerau*, plaintiff alleged that she was wrongfully discharged from her job as an emergency medical technician because defendant did not follow the disciplinary policy suggested in the manual that disciplinary action "should generally be progressive in severity." The court there found no contract was created, given the specific disclaimer in the manual, and the lack of other language in the manual strong enough to overcome the explicit meaning of the disclaimer.

In *Chesnick*, plaintiff, a nurse-administrator at defendant's hospital, challenged defendant's manual regarding unpaid absences. Along with the manual, plaintiff signed a separate document which stated that employment by the hospital of plaintiff was not contractual in nature and that plaintiff understood. The court relied on the specificity and the visibility of the disclaimer in finding no contract, as it has done in prior decisions. *Anders v. Mobil Chemical Co.* (1990), 201 Ill. App. 3d 1088, 559 N.E.2d 1119; *Hogge v. Champion Laboratories, Inc.* (1989), 190 Ill. App. 3d 620, 546 N.E.2d 1025; *Bennett v. Evanston Hospital* (1989), 184 Ill. App. 3d 1030, 540 N.E.2d 979; compare *Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, 554 N.E.2d 982 (which found a contract because the disclaimer was not set off from the rest of the text, or otherwise highlighted or titled as such).

■■■ Unlike *Mitchell*, the trial court here heard plaintiff's evidence and had an opportunity to weigh that evidence to determine if plaintiff had met her burden by a preponderance of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43; *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 561 N.E.2d 1134.) The handbook specifically stated that an employee would be subject to "immediate dismissal" for improper handling of company money. Plaintiff testified that as manager she was ultimately responsible for all of the money and merchandise in the branch store, that the money was missing under most suspicious circumstances, that she failed to personally contact the security department, failed to question other employees in the store that day, never determined whether the funds had been deposited in the bank during her absence and left the premises early on the day of the incident. On these facts, the trier of fact could certainly conclude that the plaintiff had improperly handled company money and was accordingly subject to immediate dismissal by the terms of the Carson's handbook.

In considering the weight and quality of the evidence, the court must consider all of the evidence, including evidence favorable to the defendant, pass on the credibility of witnesses, and draw reasonable inferences from the testimony. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151; *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179; *Vande-*

*vier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787, 482 N.E.2d 377.) If, after the weighing process, the court rejects some of the evidence necessary to the plaintiff's *prima facie* case, the court will enter judgment in the defendant's favor; if sufficient evidence necessary to establish plaintiff's *prima facie* case remains, the court should deny the defendant's motion. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43; *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 561 N.E.2d 1134.) We are also mindful that a reviewing court will not reverse a trial court's decision unless it is contrary to the manifest weight of the evidence.

To make a *prima facie* case, a plaintiff must present evidence regarding every essential element of her cause of action.

We find that plaintiff has not proved defendant's breach of the contract and thus has failed to make a *prima facie* case.

For that reason we affirm.

Affirmed.

CERDA, P.J., and WHITE, J., concur.