GUARANTEE TRUST LIFE INSURANCE COMPANY, Plaintiff-Appellant, v. GILLDORN INSURANCE MIDWEST CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—1796

Opinion filed December 31, 1992.

Jenner & Block, of Chicago (Linda L. Listrom and Susan L. Theiss, of counsel), for appellant.

Burke, Wilson & McIlvaine (William T. Dwyer, Jr., and LeAnn Pedersen Pope, of counsel), and Keck, Mahin & Cate (Weston W. Hanscom and Robert A. Roth, of counsel), both of Chicago, for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Guarantee Trust Life Insurance Company (Guarantee), brought action against defendants Gilldorn Insurance Midwest Corporation (Gilldorn Insurance), Minnesota Mutual Life Insurance Company (Minnesota Mutual), and Gilldorn Mortgage Midwest Corporation (Gilldorn Mortgage) claiming breach of contract, breach of fiduciary duty, and tortious interference with prospective business advantage against Gilldorn Insurance; inducing breach of fiduciary duty and tor-

tious interference with prospective business advantage against Minnesota Mutual; and breach of fiduciary duty against Gilldorn Mortgage. At the close of the plaintiff's case in chief, defendants made motions for directed findings. The trial court, in a nonjury trial, made findings and entered judgment for all defendants on all counts.

Plaintiff appeals only the judgment in favor of Gilldorn Insurance on the claim for breach of contract and fiduciary duty and in favor of Minnesota Mutual on the claim for inducing a breach of fiduciary duty.

The following issues are before this court for review: (1) whether the trial court erred in finding that Gilldorn Insurance did not breach section 2 of the agency agreement; (2) whether the trial court erred in finding that Gilldorn Insurance did not breach its fiduciary duty to Guarantee; (3) whether the trial court erred in finding that defendant Minnesota Mutual did not collude or induce defendant Gilldorn Insurance to breach the fiduciary duty which it owed to Guarantee; and (4) whether the trial court erred in finding that Guarantee failed to prove it suffered any damages.

We affirm.

Guarantee is in the business of providing mortgage life insurance to mortgagors. On July 15, 1975, Guarantee entered into a collection contract (home loan protection plan agreement) with Gilldorn Mortgage under which Guarantee issued mortgage insurance policies to Gilldorn Mortgage's mortgage loan borrowers. Gilldorn Mortgage, as collector, was required to collect insurance premiums on such policies. This arrangement enabled these mortgage policyholders to submit one check to defendant Gilldorn Mortgage whereby defendant Gilldorn Mortgage would remit the mortgage insurance premium portion to Guarantee.

On the same day that it entered into a collection agreement with Gilldorn Mortgage, Guarantee entered into an agreement (general agency contract) with Gilldorn Insurance by which defendant Gilldorn Insurance was to forward applications for insurance to plaintiff, recruit and supervise representatives to procure applications for plaintiff, deliver policies when terms and conditions governed, and transmit all collections to plaintiff. Defendant Gilldorn Insurance is a subsidiary of defendant Gilldorn Mortgage.

Both agreements provided that the relationships could be terminated by either party upon 30 days' written notice.

On August 30, 1983, pursuant to their respective contracts, defendants Gilldorn Mortgage and Gilldorn Insurance sent Guarantee notices terminating their contracts effective September 30, 1983. On September 7, 1983, 23 days before the contract's effective termina-

tion date, Gilldorn Mortgage sent notices to its mortgage loan borrowers informing them that effective October 1, 1983, Gilldorn Mortgage would no longer be affiliated with plaintiff and that they would no longer be able to include their insurance premium for Guarantee with their monthly mortgage payment. The letters further apprised the borrowers that they had several options: they could continue being insured through Guarantee by paying Guarantee directly; they could remit one combined payment including mortgage and insurance and become insured through defendant Minnesota Mutual; they could be covered under both; or they could choose to decline all mortgage insurance. A considerable number of insurance policyholders opted to become insured through defendant Minnesota Mutual.

Guarantee brought an action against Gilldorn Mortgage and Gilldorn Insurance alleging, among other things, breach of contract and breach of fiduciary duty because the notification letters were mailed before the 30-day effective termination date and also because it contended that the solicitous nature of the letters caused many of its insurance customers to leave Guarantee. Guarantee also brought an action against Minnesota Mutual claiming that Minnesota Mutual induced Gilldorn Mortgage and Gilldorn Insurance to breach the fiduciary duty owed to it.

At the close of Guarantee's case, the trial court entered judgment in favor of all defendants on all counts of the complaint. Guarantee has appealed the portions of the judgment which were rendered in favor of defendant Gilldorn Insurance on its breach of contract and breach of fiduciary duty claims and also the portion of the judgment which was rendered in favor of defendant Minnesota Mutual for inducing breach of fiduciary duty.

I

Guarantee first contends that the trial court erred in finding that Gilldorn Insurance did not breach section 2 of the agency agreement. For the reasons which follow, we disagree.

On appeal, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45; *Dreyer Medical Clinic v. Corral* (1992), 227 Ill. App. 3d 221, 225, 591 N.E.2d 111, 113; *Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787, 790, 482 N.E.2d 377, 379.

■ When ruling on a motion for judgment at the close of a plaintiff's case in a nonjury case, the court must determine whether the plaintiff has made a *prima facie* case by presenting some evidence on

every element essential to his cause of action. If the plaintiff fails to present a *prima facie* case, then the defendant is entitled to judgment as a matter of law. *Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 44; *Vandevier*, 135 Ill. App. 3d at 790, 482 N.E.2d at 379-80.

However, if the plaintiff presents a *prima facie* case, the court must consider all evidence, including evidence favorable to the defendant, pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and quality of the evidence to determine if a *prima facie* case still exists. *Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 44; *Vandevier*, 135 Ill. App. 3d at 790, 482 N.E.2d at 379-80.

The court's weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. *Kokinis*, 81 Ill. 2d at 154-55, 407 N.E.2d at 45.

Gilldorn Insurance does argue that it is not liable because Gilldorn Mortgage, and not Gilldorn Insurance, sent the letters to the insureds. We do not agree with this argument. There was sufficient evidence establishing that Gilldorn Insurance participated with Gilldorn Mortgage in dispatching the communications which were sent to the insureds.

However, the primary issue is whether the letter breached the contract. We hold that the trial court's finding on this issue is supported by the evidence.

The trial court considered the general agency contract. Section 2 of the general agency contract provided:

> "The General Agent shall forward applications for insurance and annuities to the Company for consideration and shall deliver policies when the terms and conditions governing such delivery have been complied with and shall promptly transmit all collections to the Company. *The General Agent shall make every reasonable effort to maintain in force all policies of the Company* in his territory and shall render all reasonable assistance in connection therewith." (Emphasis added.)

The trial court considered the content of the letters. The letters sent to the insureds stated:

> "Effective October 1, 1983, you will no longer be able to include the premium for this coverage with your regular monthly mortgage payment. If you would like to continue paying your mortgage life premiums along with your monthly mortgage payment, we can provide this service for you through Minnesota Mutual Life.

You may have the right to continue your old coverage by contacting the insurer about making direct premium payments. If so, you can keep either one or both of these plans—the choice is up to you. In any case, the insurance coverage is not required under your mortgage loan."

The September 7, 1983, letters which Gilldorn Mortgage sent apprised its mortgagors that effective October 1, 1983, premiums for insurance coverage provided by Guarantee would no longer be accepted with regular mortgage payments. The letter advised the mortgagors that if they wished to continue to remit one combined mortgage and mortgage insurance payment they could do so and be covered by defendant Minnesota Mutual. Gilldorn Mortgage further told the homeowners that they could continue to be covered by Guarantee by paying Guarantee directly, they could be covered by both insurance companies, or they did not have to be covered under any insurance policy.

There is no evidence that the September 7, 1983, letters caused any of the policies in force to be cancelled before the September 30, 1983, date.

■ The trial court correctly found that the "every reasonable effort to maintain" clause had to be read in connection with the right to terminate. The trial court also stated that implicit in the right to terminate a contract is a right to take on new loyalties and that there was nothing wrong with a company preparing for new business interests as an old business interest was ending.

"Words derive their meaning from the context in which they are used, and the contract must be viewed as a whole 'by viewing each part in light of the others.' " *Board of Trade v. Dow Jones & Co.* (1983), 98 Ill. 2d 109, 122, 456 N.E.2d 84, 90, quoting *La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 381.

The "every reasonable effort to maintain" clause did not preclude either Gilldorn Mortgage or Gilldorn Insurance from communicating with the policyholders. Indeed, no issue exists that some form of communication with the policyholders was appropriate. We agree with the trial court's finding that the letters did not violate section 2 of the contract. The contract expired September 30, 1983. The exercise of any options pursuant to the letters to discontinue insurance with Guarantee were to become effective after the termination of the agency contract.

## II

Guarantee next asserts that the trial court erred in finding that Gilldorn Insurance did not breach its fiduciary duty. For the reasons which follow, we disagree.

Plaintiff contends that defendants' September 7 communications to its policyholders constituted a solicitation and, therefore, a breach of fiduciary duty. While we agree with Guarantee that Gilldorn Insurance owed a fiduciary duty to Guarantee, we find no breach.

■ The contract unquestionably allowed for some communication by the general agent to the insureds regarding the termination of the agency relationship. The communications were proper because they apprised the policyholders of the four choices they had: to take one policy, the other, both, or neither. As such, the letters provided the policyholders with alternatives.

Plaintiff's interpretation would improperly preclude the general agent from advising the insureds of alternative courses of action which they might take in order to maintain insurance coverage. The letters constituted a reasonable and proper means of entering the marketplace in a fully disclosed manner. Moreover, a public policy favoring communications between insurance companies or agents and policyholders regarding cancellations or nonrenewals of insurance is evidenced by section 143.18 of the Illinois Insurance Code, which provides:

> "There shall be no liability on the part of and no cause of action of any nature shall arise against *** agents *** for any statement made *** in any written notice of cancellation or nonrenewal, or any other communications, oral or written, specifying the reasons for cancellation or nonrenewal, or for the providing of information pertaining thereto." Ill. Rev. Stat. 1991, ch. 73, par. 755.18.

Although this statute applies specifically to cancellations or nonrenewals of insurance, the same policy considerations exist as to notices to terminate collections of insurance premiums. So, although, perhaps unintended in this case, the public interest has been served incidentally.

## III

■ The trial court decided in favor of defendant Minnesota Mutual without making express findings regarding this decision as such. We hold that the trial court did not err because the disposition of

plaintiff's claims against Gilldorn Insurance were dispositive of Guarantee's claim against Minnesota Mutual.

## IV

Finally, Guarantee claims that the trial court erred in finding that it failed to prove it suffered any damages. For the reasons which follow, we disagree.

Recovery for prospective profits may be ascertained where there are any criteria by which the probable profits can be estimated with reasonable certainty. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 316, 515 N.E.2d 61, 66.

However, recovery of lost profits cannot be based upon mere conjecture or sheer speculation. (*Midland,* 118 Ill. 2d at 316, 515 N.E.2d at 66.) Since lost profits are frequently the result of several intersecting causes, it must be shown with a reasonable degree of certainty that the defendant's breach caused a specific portion of the lost profits. *Midland,* 118 Ill. 2d at 316, 515 N.E.2d at 66.

Further, when the elements upon which a claim for prospective profits rests are numerous and shifting contingencies whose relation to the wrong complained of are problematical, and such profits are not provable with assurance as a trustworthy result of the alleged cause, then there can be no recovery. *Midland,* 118 Ill. 2d at 316, 515 N.E.2d at 66.

Here, Guarantee failed to prove that the conduct of defendant Gilldorn Insurance caused it injury. Plaintiff argues that the September 7, 1983, letters caused its mortgage insurance policies to lapse by 78%. Plaintiff's expert stated that a normal lapse rate would have been 10% because people would sell their homes or otherwise feel that the insurance had served its purpose. The expert also stated that the lapse rate would tend to fluctuate in an unpredictable manner.

■ However, the trial court found the convenience factor of writing one check to be of great import and that a significant portion of policyholders would discontinue being insured by plaintiff absent that convenience. The trial court further found that according to the provisions of the contract, the relationship would terminate with the termination of the agency agreement.

The trial court also found that when one added the convenience factor of writing one check to the normal lapse rate, that plaintiff's expert's approximations about loss from changeover were hazardous and extremely difficult to make. Additionally, the trial court found plaintiff's expert's testimony to be highly subjective and "based on his personal assumptions."

We hold that the trial court's findings were not against the manifest weight of the evidence.

The judgment of the trial court is affirmed.

Affirmed.

GORDON and MURRAY, JJ., concur.