LYNNE DeHEER-LISS, Plaintiff-Appellant and Cross-Appellee, v. EUGENE F. FRIEDMAN *et al.*, Defendants-Appellees and Cross-Appellants.

First District (3rd Division)    Nos. 1—89—3251, 1—90—0646 cons.

Opinion filed June 28, 1991.—Rehearing denied May 5, 1992.

Rosenthal & Schanfield, of Chicago (Robert R. Tepper and Lynn M. Esp, of counsel), for appellant.

Eugene F. Friedman, Ltd., of Chicago (Eugene F. Friedman, of counsel), for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, plaintiff, Lynne DeHeer-Liss, appeals from an adverse decision with respect to her complaint to recover overtime and other benefits due her as a result of her employment as a legal secretary. Defendants, Eugene F. Friedman, Gail T. Friedman and Eugene F. Friedman, Ltd., appeal from a dismissal of their counterclaim and petition for attorney fees under Supreme Court Rule 137 (134 Ill. 2d R. 137) and sanctions under Supreme Court Rule 375 (134 Ill. 2d R. 375) relating to frivolous appeals.

The plaintiff filed a two-count complaint. Count I alleged that defendants had entered into an oral employment contract with plaintiff, for which she was to receive in exchange for secretarial services: (a) an annual salary of $24,200; (b) overtime compensation of time and a half for time worked beyond a 40-hour work week; (c) medical insurance for plaintiff and her dependent daughter; (d) two weeks' paid vacation, or two weeks' salary in lieu thereof; and (e) a $1,000 bonus to be paid in December 1985.

Plaintiff further alleged in her complaint that she fulfilled all of her obligations under the contract but defendants had breached the contract by: (1) failing to pay plaintiff any overtime whatsoever for the entire employment period; (2) failing to provide medical insurance; and (3) failing to pay plaintiff for two weeks of vacation time. Count II of plaintiff's complaint alleged a violation of the Illinois minimum wage statute. (Ill. Rev. Stat. 1987, ch. 48, par. 1001 *et seq.*) Plaintiff requested damages of $7,500, plus interest, attorney fees, costs and punitive damages.

Defendants filed an answer, affirmative defenses, and a counterclaim that alleged plaintiff had in her possession confidential work-

product documents belonging to defendants. Defendants requested an injunction directing plaintiff to return these documents.

After the bench trial, the trial court orally announced judgment on both counts of plaintiff's complaint in favor of the defendants. The court did not orally rule on defendants' counterclaim and the separate written order of October 31, 1989, entered by the court granting judgment for defendants on plaintiff's complaint did not refer to the counterclaim. However, the "half-sheet" entry dated October 31, 1989, and file jacket which is in the record stated that the counterclaim was dismissed "as per d.o. [draft order]."

On November 27, 1989, plaintiff filed her notice of appeal from the October 31, 1989, trial court order. On February 1, 1990, the trial court entered an order which explicitly stated that the notations on the file jacket and October 31, 1989, "half-sheet" entry dismissing defendants' counterclaim was the true order for purposes of the judgment on October 31, 1989. On March 2, 1990, defendants filed their notice of appeal from this February 1, 1990, order which clarified the prior dismissal of the counterclaim as well as their January 16, 1990, petition for attorney fees.

In support of her complaint, plaintiff testified that she had passed a difficult typing test prior to her employment interview. During the interview, plaintiff and defendant Eugene F. Friedman discussed her employment background and defendant offered plaintiff a position as a legal secretary, agreeing to pay $22,000 per year for a 40-hour work week with standard holidays and sick days and medical insurance for plaintiff and her dependent daughter.

After further discussion, plaintiff testified that she and defendant agreed on an annual salary of $24,200, a bonus of $1,000 in December if plaintiff was still employed at that time, time and a half for all hours worked in excess of 40 hours per week, holidays, sick days and medical insurance for herself and her dependent daughter.

After acceptance of this agreement, plaintiff began work in defendants' law office on May 15, 1985, and continued in the defendants' employ until May 15, 1986.

Plaintiff testified that during almost the entire time of her employment, she submitted to defendant time sheets detailing her overtime hours worked. These time sheets were not offered in evidence and defendant denied their existence.

However, plaintiff apparently kept a contemporaneous log of her overtime hours in several ways: in a notebook, on a personal calendar and in a steno book.

For the period of July 1985 through November 1985, overtime hours were kept in a notebook and copied from time sheets given to defendant. Plaintiff "conservatively" estimated that she had worked over 170 hours in overtime.

During December 1985, plaintiff noted 39 overtime hours on a calendar and in a notebook which the court received into evidence.

From time to time during her employment, plaintiff requested overtime pay from the defendant and was put off for a variety of reasons. Particularly in December 1985, she provided defendant with her calculations for the total 1985 overtime and these calculations were received into evidence.

During 1986 she logged an additional 144 hours of overtime in a docket-type book and in a steno book. Again, plaintiff claims that time sheets were submitted to the defendant and kept in his office although unavailable to the plaintiff at a later time.

Bruce Craig, an attorney employed by defendant, corroborated plaintiff's testimony with respect to the content of the original job interview and the agreement reached with defendant relating to method of payments for time and a half of hours above 40 per week, insurance coverage and vacation time. Craig further testified that plaintiff and defendant had discussed overtime payments in his presence from time to time and recalled that defendant directly instructed plaintiff to "keep track of her hours" when one of the other secretaries in defendant's employ had resigned, many additional overtime hours by plaintiff being then contemplated by the parties.

Mr. Craig testified that he often saw plaintiff working longer than a nine-hour day at least "several days a week" and that he did not recall plaintiff ever having received overtime pay.

Some months after plaintiff began working, her daughter was in an accident and had cause to be treated at a hospital. At this point, plaintiff discovered that she and her daughter were not covered by health insurance as was agreed to by the parties at the time of the initial job interview.

Thereafter, defendant told plaintiff to secure "some quotes and policy descriptions" from insurance companies.

While there is a good deal of testimony regarding plaintiff's medical bills and her search for insurance, the question here is whether she was provided the coverage initially agreed upon and was damaged by defendant's failure to provide such coverage.

At trial, there was some question as to whether the medical bills related to periods prior to the issuance of the agreed medical policy. Both plaintiff and Mr. Craig testified that defendant had promised to

provide plaintiff with at least medical insurance coverage with a $200 deductible.

Defendant seeks to offset plaintiff's vacation time with several days spent in Las Vegas, Nevada, accompanying defendant and a client to a trade convention in which defendant played a prominent part. Plaintiff's duties at the convention were secretarial in nature and she was required to attend the convention at the direction of the defendant, her employer.

Throughout her employment, plaintiff's actions were at all times consistent with what appeared to be the terms the parties had agreed upon: she kept track of her overtime hours and notified defendant of them on a regular basis, she made a claim for overtime hours from time to time, she attempted to obtain and file an insurance claim for medical expenses incurred and she sought two weeks' vacation pay.

Similarly, defendant's actions seemed to be consistent with the agreement alleged by the plaintiff: he required her to keep time sheets, he directed her, after the fact, to secure medical insurance and he apparently concedes the plaintiff's right to a two-week vacation.

The trial court entered a finding for the defendant on counts I and II of plaintiff's complaint at the close of the plaintiff's case.

■ We now turn to the merits of plaintiff's appeal. When ruling on a defendant's motion for judgment at the close of plaintiff's case in a nonjury trial, the court must first determine whether the plaintiff has made a *prima facie* case by presenting at least some evidence on every essential element of his cause of action, and then, if he has made out a *prima facie* case, the trial judge must weigh the plaintiff's evidence to determine if the burden of proof has been met by a preponderance of evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154; *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 186.) The *Mannion* court determined that when a trial court considers the weight and quality of the evidence, it must consider evidence favorable to the defendant, the credibility of witnesses, and reasonable inferences to be drawn from the testimony. (*Mannion*, 204 Ill. App. 3d at 186.) The court further noted that if, after the evidence is weighed, the evidence necessary to the plaintiff's *prima facie* case is almost absent or negated, the court should enter judgment in the defendant's favor. But if there remains sufficient evidence to establish plaintiff's *prima facie* case, the court should deny the defendants' motion. *Kokinis*, 81 Ill. 2d at 155; *Mannion*, 204 Ill. App. 3d at 186.

■ A contract of employment is formed when one party promises to render services in exchange for the other party's promise to pay wages. (*Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787,

793.) In the case at bar, evidence of the formation of such a contract is overwhelming.

For plaintiff to meet her burden of proof in a contract action, plaintiff must establish an offer and acceptance, consideration, definite and certain terms of the contract, plaintiff's performance of all required contractual conditions, the defendant's breach of the terms of the contract, and damages resulting from that breach. (*Mannion*, 204 Ill. App. 3d at 186; *Vandevier*, 135 Ill. App. 3d at 791; *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.* (1977), 51 Ill. App. 3d 11, 14.) We note that in reviewing the trial court's finding that plaintiff did not sustain her burden of proof as to these elements, we cannot reverse that decision unless it is contrary to the manifest weight of the evidence. *Mannion*, 204 Ill. App. 3d at 186; *Vandevier*, 135 Ill. App. 3d at 790.

Courts of review must take great care that they do not provide litigants with a trial *de novo* and substitute their judgment for that of the trial court merely because they would have reached a different result.

■ But here the record is clear that the parties had a meeting of the minds as to the terms of employment and that the initial meeting of the parties was attended by an independent witness. While testimony and documentary evidence may not have been as clear or as thorough as the trier of fact might have liked, the evidence does establish significant amounts of overtime, some loss occasioned by the lack of medical coverage and failure to provide appropriate reimbursement for vacation time.

Plaintiff has met her burden of proof in this contract action and has established a *prima facie* case. The trial court's ruling, therefore, was contrary to the manifest weight of the evidence, and we reverse and remand this cause of action for a new trial as to count I of plaintiff's complaint.

■ As to count II of plaintiff's complaint, her claim under the Illinois Minimum Wage Act, plaintiff failed to provide adequate evidence at trial to establish a *prima facie* case that employment was within the purview of the statute. We find that the trial court properly dismissed count II of plaintiff's complaint.

■ We agree with plaintiff that this court has no jurisdiction to consider defendants' appeal on dismissal of their counterclaim. The "half-sheet" in the record shows that a dismissal of the counterclaim as well as the counts in plaintiff's complaint was entered on October 31, 1989. On February 1, 1990, the court entered another order explicitly stating that the prior order of October 31, 1989, was consist-

ent with the "half-sheet" order dismissing the counterclaim and that the "half-sheet" order was the final order in the case.

Accordingly, plaintiff's notice of appeal filed November 27, 1989, was timely, but defendants' notice of appeal filed March 2, 1990, for dismissal of its counterclaim was not in accordance with Supreme Court Rule 303. (107 Ill. 2d R. 303.) Defendants' reliance on *Stoermer v. Edgar* (1984), 104 Ill. 2d 287, 291, is inapposite because there the trial court's memorandum stated that a formal order would be entered at a later time. (107 Ill. 2d R. 272.) In the case at bar, the trial court was merely rectifying a clerical error as a matter of course. See *Virzint v. Beranek* (1990), 202 Ill. App. 3d 511, 515; *Hopedale Medical Foundation v. Zagel* (1981), 97 Ill. App. 3d 513, 515.

■ In addressing defendants' contention that the trial court erred in dismissing their petition for attorney fees, we note that such petition (134 Ill. 2d R. 137) cannot be brought as a collateral matter after the 30-day period for filing a notice of appeal has passed and jurisdiction in the principal action has vested in the appellate court. (See *Cashmore v. Builders Square, Inc.* (1990), 207 Ill. App. 3d 267.) Therefore, defendants' January 16, 1990, petition in the trial court was brought after the 30-day period and after the notice of appeal of the principal action vested jurisdiction in this court. The Rule 137 petition brought by defendants in the trial court was untimely and dismissal appropriate.

■ Defendants have also requested sanctions against plaintiff directly from this court. Under Supreme Court Rule 375 (134 Ill. 2d R. 375), a party who has filed a frivolous appeal or an appeal increasing the cost of litigation could be ordered to pay the other party the reasonable costs of the appeal, including reasonable attorney fees.

Since we have reversed and remanded a portion of the proceedings for a new trial, it is certainly apparent that plaintiff has not prosecuted a frivolous appeal or prolonged the action. Defendants' petition pursuant to Supreme Court Rule 375 is dismissed.

Accordingly, the judgment of the trial court is affirmed in part and reversed and remanded in part for a new trial, and defendants' petition under Supreme Court Rule 375 is dismissed.

Affirmed in part; reversed and remanded in part with directions.

RIZZI and WHITE, JJ., concur.