3 March 2000

No. 2--98--1661

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

THE VILLAGE OF WADSWORTH, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

)

v. ) No. 97--MR--217

)

MICHAEL KERTON, ) Honorable

) Charles F. Scott,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, the Village of Wadsworth (Village), filed a two-

count complaint in the circuit court of Lake County against defendant, Michael Kerton.  In count I, the Village asked the court to declare that defendant's installation of a fence, removal of vegetation, planting of new vegetation, and placing of mulch within the scenic corridor and deed-restricted open areas (protected areas) within defendant's lot were prohibited and unlawful.  The Village sought an injunction requiring the removal of the fence, mulch, and newly planted vegetation and prohibiting any further disturbance of the protected areas.  In count II, the Village sought a fine for defendant's violations of the protected areas.

Following a bench trial, the trial court denied the Village's request that defendant be ordered to remove the fence.  The court enjoined defendant from removing or planting any other vegetation within the protected areas without approval from the plan commission.  It also ordered defendant to submit a landscape plan to the plan commission for approval of landscaping already done and to abide by its decision or, if defendant chose not to submit such a plan, to remove the trees planted and mulch installed from the protected areas.  As to count II, the court found the complaint failed to specify the particular zoning ordinance or scenic corridor provision violated.  The Village immediately moved to amend count II to conform to the proofs, in particular, to specify the precise scenic corridor provisions violated.  The trial court denied the motion.  The Village appeals.

On appeal, the Village contends that (1) the trial court abused its discretion in denying the Village's request for injunctive relief to require defendant to remove his fence as well as the trees planted and mulch installed in the protected areas; (2) the trial court erred in finding that count II of the complaint was not sufficiently specific to apprise defendant of the section of the zoning ordinance violated; and (3) the trial court abused its discretion in denying the Village's request to amend its pleadings to conform to the proofs.

In 1990 the Village approved a subdivision known as the Willows Planned Unit Development (the Willows).  The plat was duly recorded on August 10, 1990.  The Village impressed certain conditions upon the subdivision as reflected in the restrictions on the plat.  One of the restrictions pertained to the areas designated on the plat as "deed restricted open space" areas or "scenic corridor" areas.  The restriction provided as follows:

"ALL AREAS DESIGNATED SCENIC CORRIDOR OR DEED RESTRICTED OPEN SPACE ON THIS PLAT SHALL BE MAINTAINED IN THEIR NATURAL, UNDISTURBED CONDITION AND NO MAN-MADE STRUCTURES OF ANY KIND SHALL BE CONSTRUCTED THEREON, NOR SHALL ANY GRADING BE PERMITTED ON ANY SCENIC CORRIDOR OR DEED RESTRICTED OPEN SPACE AREA EXCEPT ACCORDING TO THE REGULATIONS IN THE WADSWORTH ORDINANCE THAT APPLY TO THESE AREAS.  NATURAL VEGETATION SHALL BE PRESERVED AND MAINTAINED AND SHALL NOT BE MOWED, CULTIVATED, SPRAYED OR IN ANY WAY DISTURBED WITHOUT FOLLOWING THE REQUIRED PROCEDURES OF THE VILLAGE OF WADSWORTH.  NOXIOUS PLANT MATERIAL MAY BE REMOVED SUBJECT TO A LANDSCAPE PLAN APPROVED BY THE PLAN COMMISSION."

As part of the subdivision approval process, covenants and restrictions were recorded with the plat.  The covenants contained a provision for the deed-restricted open space areas that was identical to the restriction on the plat pertaining to these areas.  The covenants also contained a provision granting the Village the right to enforce the covenants.  Paragraph 2 of clause VII provided:

"The Covenants herein set forth shall run with the land and bind Declarant, its successors, grantees and assigns, and all parties claiming by, through, or under them.  Declarant, the Association, any Homesite owner and the Village of Wadsworth shall each have the right to sue for and obtain a prohibitive or mandatory injunction or any equitable remedy to prevent the breach of, or to enforce the observance of, the Covenants above set forth, or any of them, in addition to the right to bring an ordinary legal action for damages."

In 1991 the Village adopted a comprehensive zoning ordinance that superceded the prior zoning ordinance.  The new zoning ordinance included provisions for the scenic corridor areas:

"5.3 OVERLAY DISTRICT REGULATIONS

A. Scenic Corridor Overlay District Regulations

1.  Intent

The Scenic Corridor Overlay District is established to preserve the scenic qualities of the Wadsworth area in a period of transition from a rural farming community to a low density, non-farm residential community.  The vistas, open fields, wetlands, and majestic stands of hardwood forest are primary scenic resources which make Wadsworth a pleasant place to live.  These resources form the basis for both planning and zoning for low density, open residential subdivisions.  It is the intent of this section to preserve highly visible portions of this scenic resource so that future development and future residents can continue to enjoy the qualities which first attracted non-farm residents to the Village and its environs.

2.  Uses Permitted

These uses permitted in the Scenic Corridor Overlay District shall be those uses as shown in Table 1-A, Uses Permitted in Overlay Districts subject to the regulations established herein.  Any existing use is a permitted use in the SCOD provided such use was a legally established use and permitted use in the underlying district on the effective date of this ordinance.

3.  Prohibited Construction

Except as noted below all buildings and structures including at-grade construction shall be excluded from the scenic corridors.

4.  Exceptions

The following uses and accessory uses are permitted in scenic corridors subject to the landscape standards established herein:

a. Buildings and structures including existing accessory structures existing on the effective date of this Ordinance.

b. Agricultural uses provided that no barns or other structures shall be constructed within such scenic corridor.

c. Open uses as provided in Table 1-A, Uses Permitted in Overlay Districts.

d. Entrances to subdivisions including identification  signs subject to the approval of the Plan Commission and Village Board of Trustees.

e. Temporary real estate sales signs subject to the issuance of a temporary use permit.

5. Landscape Standards

All scenic corridor areas shall be landscaped in accordance with the following standards.

a. All landscape improvement shall be undertaken only in accordance with a landscape plan prepared by the owner, submitted to and approved by the Plan Commission.  In addition to the standards below, the plan shall conform to the standards and requirements of Wadsworth Landscape Ordinance or other suitable standards adopted by the Village Board."  Wadsworth Zoning Ordinance, art. 5.3A (eff. April 2, 1991).

The new zoning ordinance also included an overlay map that established scenic corridors throughout the Village, including the eastern portion of lot 40 in the Willows.  The lot also contained deed-restricted open space areas that overlapped with the scenic corridor areas.  

In 1993 defendant purchased lot 40 in the Willows, which was then vacant.  He subsequently constructed a home on the lot and moved into the home in 1995.  Defendant acknowledged that when he purchased the lot he received a copy of the covenants and restrictions for the Willows, the plat of survey indicating on its face that there was a deed-restricted area on his lot, and a title insurance policy.  The policy raised as objections the deed-

restricted open space area over the east 148.97 feet and the scenic corridor area over the east 100 feet of lot 40.  Defendant admitted that he never read his copy of the covenants and restrictions before putting up his fence.  He also admitted that he never read the deed or the title policy after he received them.  

On September 13, 1996, defendant went to the Village hall and applied for a permit to erect a fence.  Deborah Mikesch, an administrative assistant for the Village who had the authority to issue building permits, issued a permit to defendant.  When defendant applied for the fence permit, he used a landscape drawing that did not show the location of the protected areas on his lot or indicate the location of Route 41.  Defendant acknowledged that he did not show Mikesch anything that disclosed that the lot had deed-

restricted and scenic corridor areas on it and that he planned to install the fence in the protected areas.  Defendant recalled that he had a brief conversation with Mikesch regarding the fence, commenting that he was erecting it for security purposes because his lot backed up to Route 41.  Defendant stated that Mikesch did not ask for anything other than the application for the building permit.  
It was defendant's testimony that the application did not request any information regarding deed restriction, conservancy, or open space areas.  Defendant acknowledged that the application contained a paragraph stating that he (as applicant) had provided "all the pertinent information relating to the structure and/or county ordinances pertaining thereto."  

Mikesch identified the application form and landscaping drawing defendant gave her when he applied for his building permit.  Defendant did not provide any other documents.  Mikesch stated that to obtain a fence permit a "plat of survey or landscape plan showing the property lines" was required.  The landscape plan, entered into evidence, did not show the rear property lines of defendant's lot or the location of Route 41.

It was Mikesch's testimony that she was unaware that the fence was to be located in the scenic corridor or deed-restricted areas of defendant's lot.  She was aware that his lot was located in the Willows and that it bordered Route 41.  Mikesch acknowledged that a copy of the plat of the Willows subdivision was in her office.  Mikesch stated that she would not have issued the permit to defendant if he had told her that the fence was going to be erected in the deed-restricted or open space area.  Mikesch thought that she was dealing with a routine fence permit.  She issued the permit believing that defendant had complied with the Village's requirements for a fence permit.  

After the permit was issued, defendant ordered the fence.  He  waited approximately six weeks for the fence to arrive.  During this period of time, defendant was not contacted by the Village.  Defendant had a stockade fence installed along the eastern perimeter of his lot within the protected areas.  Defendant stated that the fence cost approximately $2,000 and took 1½ days to install.  Defendant, a landscape contractor, also had vegetation, which he described as "noxious weed," removed from the protected areas prior to erecting the fence.  The removal took two days.  Subsequently, defendant had approximately 10 white pine and two oak trees planted within the protected areas.  The removed vegetation was chipped and installed as mulch throughout the protected areas, particularly around the freshly planted trees.

Defendant acknowledged that there was no indication on the permit application that he intended to remove any vegetation.  Defendant also acknowledged that he never submitted a landscape plan to the plan commission for approval of the removal of the vegetation in the deed-restricted area either before or after the work was done.  According to defendant, he was unaware that the Village required him to submit a landscape plan.  Defendant stated that he intended to rejuvenate his natural area by removing buckthorn plants, which he described as "noxious weed," 
and dead trees lying on the ground.  It was defendant's testimony that he did not remove any plant material from the area because everything cleared out was chipped up.  Defendant said that he had not done anything further to the area since September 1996.  Defendant acknowledged that his deed-restricted area no longer looked as it had when he moved onto his lot and that it had been his decision as to which bushes were to be removed and which were to stay.

Arthur Leable, building inspector for the Village, testified that in November 1996 he noticed that a fence had been erected on the scenic corridor of defendant's lot.  In a letter to defendant, Leable informed him that the fence had been built in the Route 41 scenic corridor, which was prohibited.  The letter pointed out that the site plan defendant had presented to the Village for his fence permit had not shown that the plot was in open space and that, had the site plan been accurate, the Village would not have issued a permit.  Leable also pointed out that the fence was in violation "of your own covenants, clause 4, general restrictions, paragraph 17."  Leable asked defendant to remove the fence and informed him that it could be erected outside the scenic corridor and deed restricted areas using the same permit, provided defendant furnished the Village with a correct site plan.

On December 16, 1996, Leable noticed that defendant's fence had not been removed.  He red-tagged the fence.  Leable explained that the red tag indicated that defendant had violated an ordinance by erecting the fence in a scenic corridor.  Leable testified that, as he walked around the end of the fence to place the red tag on the fence, he noticed that the vegetation near the fenced area had been cleared.  Evergreens had been planted and woodchips had been placed in the area around the trees.  Leable recalled that the vegetation on the lots to the north and south of defendant's was quite dense compared to defendant's lot.

Leable acknowledged that both he and Mikesch had the authority to issue a fence permit.  Leable stated that he would subsequently review permits issued by Mikesch but that he had not looked at the one issued by her to defendant until after he observed the fence.  The landscape design filed with the permit application did not indicate that the fence was going to be installed in the scenic corridor area, nor did it show Route 41.  Leable acknowledged that he had a plat of the Willows subdivision in his office and that it was available for his or Mikesch's review in handling any fence requests.  

Defendant acknowledged receiving Leable's letter asking him to remove his fence and admitted that he did not comply with the request.  Defendant also acknowledged receiving a letter from the Village attorney informing him that the erection of his fence and the installation of trees, mulch, and bushes were prohibited by the covenants and restrictions filed with the plat of the subdivision, as the areas were to remain in their natural, undisturbed condition without any structures.  Additionally, the attorney informed defendant that the scenic corridor could not be improved with landscape material unless the plan commission had approved such a plan.  The attorney instructed defendant to remove the fence and the landscaping improvements, including the mulch.  Defendant acknowledged that he had not complied with these instructions.  As a result of his failure to comply, the Village filed its two-count complaint.  

At the conclusion of the trial, the court ruled in defendant's favor, finding that the Village was estopped from requiring defendant to remove the fence.  As for the removal of the vegetation defendant planted, the court allowed defendant 14 days in which to submit a landscape plan to the plan commission for its approval of the landscaping already performed.  The court ordered defendant to remove the trees planted and the mulch in the protected areas if he failed to submit such a plan.  The court also enjoined defendant from any further removal or plantings of vegetation in the protected areas without the plan commission's approval.  As to count II of the Village's complaint, which requested that defendant be fined for his ordinance violation, the court found that, because neither count II nor that portion of count I incorporated into count II specified the particular zoning ordinance that defendant had violated, defendant was "not guilty" of the zoning ordinance charge against him.

The Village first contends that the trial court abused its discretion in denying its request for an injunction requiring defendant to remove his fence as well as the trees planted and the mulch installed in the protected areas.  The Village maintains that the court erred in finding that the Village was estopped from enforcing the various provisions that prohibited such a structure.   While the doctrine of equitable estoppel may be applied to municipalities, its use against a public body is not favored.  
La Salle National Trust v. Village of Westmont
, 264 Ill. App. 3d 43, 64-65 (1994).  When the doctrine is to be invoked against a governmental body acting in the exercise of its governmental functions, estoppel will lie only in extraordinary or compelling circumstances.  
La Salle National Trust
, 264 Ill. App. 3d at 65.  To invoke estoppel against a municipality, two requisites must be met: (1) an affirmative act on the part of the municipality; and (2) the inducement of substantial reliance by the affirmative act.  
Nielsen-Massey Vanillas, Inc. v. City of Waukegan
, 276 Ill. App. 3d 146, 155 (1995).  The affirmative act that induces a party's reliance  must be an act of the municipality itself, such as a legislative enactment, rather than the unauthorized acts of a ministerial officer.  
Nielsen-Massey Vanillas
, 276 Ill. App. 3d at 155-56.  A municipality cannot be estopped by an act of its agent beyond the authority expressly conferred upon that official.  
Halleck v. County of Cook
, 264 Ill. App. 3d 887, 894 (1994).  If the unauthorized acts of a governmental employee were allowed to bind a municipality through equitable estoppel, the municipality would remain helpless to remedy errors and forced to permit violations to remain in perpetuity.  
Halleck
, 264 Ill. App. 3d at 894.  

The first element of estoppel, 
i.e.
, that the Village had taken some sort of affirmative action, has not been met, as the act  that induced defendant's reliance was not an act of the municipality but an unauthorized act of administrative assistant Deborah Mikesch.  As Mikesch acknowledged at trial, she had the authority to issue building permits.  However, when she issued a permit for a fence to be erected in a protected area where by ordinance such a structure was prohibited, she was acting beyond her authority.  Section 5.3A3 of the 1991 comprehensive zoning ordinance prohibited the construction of all buildings and structures in the scenic corridor overlay district that did not fall within the designated exceptions to the prohibition.  Section 5.3A4 set forth the permitted exceptions.  That section provided:

"4.  Exceptions

The following uses and accessory uses are permitted in scenic corridors subject to the landscape standards established herein:

a. Buildings and structures including existing accessory structures existing on the effective date of this Ordinance.

b. Agricultural uses provided that no barns or other structures shall be constructed within such scenic corridor.

c. Open uses as provided in Table 1-A, Uses Permitted in Overlay Districts.

d. Entrances to subdivisions including identification  signs subject to the approval of the Plan Commission and Village Board of Trustees.

e. Temporary real estate sales signs subject to the issuance of a temporary use permit."  Wadsworth Zoning Ordinance art. 5.3A4 (eff. April 2, 1991).

The Village's overlay district map, entered into evidence, established that defendant's fence was erected in the scenic corridor area.  Yet, defendant's fence was not among any of the exceptions listed in the ordinance.  

The trial court's act of holding the Village bound through equitable estoppel for Mikesch's unauthorized act effectively forced the Village to allow defendant's violation of the ordinance to "remain in perpetuity."  It also defeated the intent or purpose for which, according to section 5.3A1 of the ordinance, the scenic corridor overlay district was established.  That section provided:

"5.3 OVERLAY DISTRICT REGULATIONS

A. Scenic Corridor Overlay District Regulations

1.  Intent

The Scenic Corridor Overlay District is established to preserve the scenic qualities of the Wadsworth area in a period of transition from a rural farming community to a low density, non-farm residential community.  The vistas, open fields, wetlands, and majestic stands of hardwood forest are primary scenic resources which make Wadsworth a pleasant place to live.  These resources form the basis for both planning and zoning for low density, open residential subdivisions.  It is the intent of this section to preserve highly visible portions of this scenic resource so that future development and future residents can continue to enjoy the qualities which first attracted non-farm residents to the Village and its environs."

Wadsworth Zoning Ordinance art. 5.3A1 (eff. April 2, 1991).

Defendant's fence was in violation of the purpose of the scenic corridor overlay district, as its presence detracted from highly visible portions of the Village's scenic resources, 
i.e.
, the dense vegetation that apparently lined both sides of Route 41 as depicted in defendant's photos and through building inspector Arthur Leable's testimony.

However, even were we to assume, 
arguendo
, that the first element of estoppel was met and that defendant was induced by Mikesch's conduct to erect his fence, the evidence did not demonstrate that, in the absence of estoppel, defendant would suffer a substantial loss.  The cost of the fence, according to defendant, was approximately $2,000.  In our view, ordering the removal of the fence constitutes neither a substantial loss nor a compelling circumstance for invoking estoppel against the Village, especially where, as in this case, it cannot be said that defendant had no knowledge or convenient means of knowing 
that the areas in the rear portion of his property constituted protected areas.   

Both the plat of survey of the Willows subdivision and the covenants and restrictions recorded with the plat indicated that the area in which defendant built his fence was a "deed restricted open space" area.  The restriction on the plat pertaining to this area provided:

"ALL AREAS DESIGNATED SCENIC CORRIDOR OR DEED RESTRICTED OPEN SPACE ON THIS PLAT SHALL BE MAINTAINED IN THEIR NATURAL, UNDISTURBED CONDITION AND NO MAN-MADE STRUCTURES OF ANY KIND SHALL BE CONSTRUCTED THEREON, NOR SHALL ANY GRADING BE PERMITTED ON ANY SCENIC CORRIDOR OR DEED RESTRICTED OPEN SPACE AREA EXCEPT ACCORDING TO THE REGULATIONS IN THE WADSWORTH ORDINANCE THAT APPLY TO THESE AREAS, NATURAL VEGETATION SHALL BE PRESERVED AND MAINTAINED AND SHALL NOT BE MOWED, CULTIVATED, SPRAYED OR IN ANY WAY DISTURBED WITHOUT FOLLOWING THE REQUIRED PROCEDURES OF THE VILLAGE OF WADSWORTH.  NOXIOUS PLANT MATERIAL MAY BE REMOVED SUBJECT TO A LANDSCAPE PLAN APPROVED BY THE PLAN COMMISSION."

Paragraph 17 of clause IV of the declaration of covenants, conditions, and restrictions for the Willows contained an identical restriction.  Defendant acknowledged at trial that when he purchased his lot he received both a copy of the covenants and restrictions pertaining to the Willows as well as a copy of the plat of survey.  Defendant also acknowledged that at the time he bought his lot he was aware that there was a deed-restricted area on it.  When shown paragraph 17 of the covenants and restrictions, defendant stated, "I recall this."  The party seeking to claim the benefit of estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others.  
Hubble v. O'Connor
, 291 Ill. App. 3d 974, 987 (1997).  Under the particular circumstances of this case, we do not think defendant can plead ignorance of the restrictions regarding the scenic corridor and deed-restricted open space areas on his lot when he acknowledged receiving documents that clearly designated these areas on the lot. 

A party seeking to enforce a restriction on a lot must show that the lot was purchased with actual or constructive knowledge of the restriction.  
Kuney v. Zoning Board of Appeals
, 162 Ill. App. 3d 854, 859 (1987).  Once a subdivision plat with restrictions is recorded, every lot purchaser has constructive notice of the restriction.  
Exchange National Bank v. City of Des Plaines
, 32 Ill. App. 3d 722, 732 (1975).  Accordingly, even if defendant was unaware of the provision of the ordinance prohibiting structures such as his fence from being constructed in the protected areas of his lot, the Village would not be estopped from requiring defendant to remove his fence from the protected areas.  Pursuant to the provision on the plat and in the covenants and restrictions recorded with the plat, defendant had constructive knowledge that building his fence was prohibited.  As paragraph 2 of clause VI of the covenants and restrictions contained a provision giving the Village "the right to sue for and obtain a prohibitive or mandatory injunction or any other equitable remedy" to enforce the covenants and restrictions, we conclude the trial court abused its discretion in denying the Village's request for an injunction to require defendant to remove his fence.  

We also hold the trial court abused its discretion in denying the Village's request to order defendant to remove the vegetation he planted and the mulch he installed in the protected areas.  The evidence showed, and defendant acknowledged, that he never submitted a landscape plan to the planning commission for approval of the removal of the plants that he classified as "noxious" plant material.  Under section 5.3A5 of the overlay district regulations of the Village's comprehensive zoning ordinance, as well as the restriction noted above on the plat and the restriction pertaining to deed-restricted open space areas filed along with the plat, any disturbance to existing plant material or improvements to the landscape could not be undertaken without the prior approval of a landscape plan by the plan commission.

Defendant claimed he was unaware of the Village's requirement that a landscape plan must be submitted to the plan commission.  As determined above, however, ignorance is no excuse, as defendant had constructive knowledge of the requirement once the subdivision plat and the restrictions were recorded.  
Exchange National Bank
, 32 Ill. App. 3d at 732.  Moreover, defendant cannot claim that the Village is estopped from enforcing the provision of the ordinance pertaining to the requirement because defendant never submitted a landscape plan to the plan commission and, consequently, never received approval for any of the landscape improvements he undertook.

The trial court dealt with defendant's violation of the ordinance and the plat restrictions by ordering defendant to submit a landscape plan to the plan commission within 14 days of the court's order for approval and to abide by its decision.  If defendant failed to submit such a plan, he was to remove the trees planted and the mulch installed from the protected areas.  There is nothing in the record to reveal whether defendant complied with the court's order or whether he received approval from the plan commission.  

At any rate, the trial court's solution condones defendant's outright violation of the ordinance and plat restrictions.  Defendant testified that at the time of trial the trees he had planted in the protected areas were small and that they could probably be removed.  Most of the mulch had disintegrated.  Because defendant is a landscape contractor, requiring him to remove the trees would not amount to a substantial loss to him.  The trees could be utilized in his landscaping business.  As the evidence clearly showed that defendant had violated both the ordinance and plat restrictions when he removed existing vegetation and replaced it with other vegetation, we conclude that the trial court abused its discretion in failing to grant the Village's request for injunctive relief to require defendant to remove the trees planted and the remaining mulch from the protected areas.  

Plaintiff next contends that the trial court erred in finding that count II of the complaint was not sufficiently specific to apprise defendant of the section of the zoning ordinance violated.  Pleadings are to be liberally construed, and no pleading is bad in substance that contains such information as reasonably informs the opposite party of the nature of the claim that he is called upon to meet.  735 ILCS 5/2-603(c), 2-612(b) (West 1996); 
Kapoor v. Robins
, 214 Ill. App. 3d 248, 254 (1991).  Exhibits attached to complaints become part of the pleadings, and facts stated in such exhibits are considered the same as having been alleged in the complaint.  
Modern Track Machinery, Inc. v. Bry-Lon, Ltd.
, 197 Ill. App. 3d 560, 564 (1990).  

We have carefully reviewed the complaint and the exhibits attached to it and conclude that they contained sufficient information to reasonably inform defendant of the nature of the action against him.  Paragraphs 1 through 10 of count I, which the Village adopted and realleged as paragraphs 1 through 10 of count II, together with the exhibits attached to the complaint, 
i.e.
, excerpts from the plat of survey for the Willows and from the covenant and restrictions filed with the plat, both of which defendant acknowledged receiving at the time he purchased his lot, and a copy of the scenic corridor provisions of section 10-4-3 of the Village Code, which were identical to the scenic corridor provisions of section 5.3A of the zoning ordinance,  were sufficient to put defendant on notice of the claim against him.  Moreover, at the time of trial there could be no doubt on defendant's part which provision of the ordinance he had violated.  The Village's response to defendant's summary judgment motion, which the Village filed more than six months prior to trial, asserted that defendant had violated the scenic corridor provisions of the 1991 ordinance by erecting his fence and disturbing the present vegetation without prior approval of the plan commission.  Attached to the motion, as an exhibit, was the specific scenic corridor provisions of the ordinance.

We find it significant that defendant filed an answer and never contested the sufficiency of the complaint.  Rather, in making its findings, the trial court, 
sua sponte
, decided that count II of the complaint was not specific enough to inform defendant of the particular zoning ordinance or provisions he had violated.  In our view, however, the court's decision was erroneous not only because, as determined above, count II was specifically sufficient but also because, on two occasions during trial, the Village confirmed for the court and defendant the section of the ordinance defendant had violated.  In fact, the Village not only entered into evidence the 1991 ordinance containing the scenic corridor provisions violated but also entered into evidence, as a separate exhibit, a copy of just the scenic corridor provisions with the violated sections highlighted in yellow.  We conclude that the trial court erred in finding that count II was not sufficiently specific.

The court's main concern with count II of the Village's complaint was that there was no reference in the complaint to the specific ordinance or scenic corridor provision violated.  That concern could have been alleviated by allowing the Village to amend its complaint to conform to the proof adduced at trial.  Following the court's judgment, the Village made a motion to amend its complaint to conform to its pleadings.  The trial court denied the motion, stating that it believed it came too late.

Pursuant to section 2--616(c) of the Code of Civil Procedure (735 ILCS 5/2--616(c) (West 1996)), a party may amend its complaint at any time, before or after judgment, if the amendment is made to conform the plaintiff's pleadings to the proof at trial.  Whether to allow an amendment of a complaint is a matter within the sound discretion of the trial court, and, absent an abuse of that discretion, the court's determination will not be overturned on review.  
Pry v. Alton & Southern Ry. Co.
, 233 Ill. App. 3d 197, 213 (1992).  An amendment of the pleadings to conform to the proof cannot be allowed unless the evidence already produced supports the amendment.  
Stringer Construction Co. v. Chicago Housing Authority
, 206 Ill. App. 3d 250, 258 (1990).  

Here, the Village sought only to amend count II by specifying the particular sections of the scenic corridor provisions of the ordinance, 
i.e.
, section 5.3A3 pertaining to "Prohibited Construction" and section 5.3A5 regarding "Landscape Standards," that it claimed defendant had violated.  The evidence presented at trial supported the amendment and, therefore, the amendment should have been allowed.  Accordingly, we hold that, even if count II was not sufficiently specific, the trial court's failure to allow the Village to amend its pleadings to conform with the proof presented at trial constituted an abuse of discretion. 

For the reasons stated above, we affirm that part of the judgment of the circuit court of Lake County enjoining defendant from removing or planting any other vegetation within the protected areas; we reverse that part denying the Village's request for an injunction ordering defendant to remove the fence, trees, and any remaining mulch from the protected areas; and we reverse that portion effectively dismissing count II of the Village's complaint and remand the cause for further proceedings on the relief sought in count II.

Affirmed in part and reversed in part; cause remanded.

McLAREN and COLWELL, JJ., concur.