FOURTH DIVISION

1-00-0148 MARCH 29, 2001

MICHAEL JACOBSON, ALVIN MILLER, ) Appeal from the

Individually, and as class ) Circuit Court of

representatives, ) Cook County.

)

Plaintiffs-Appellants, )

)

v. )

) 

BOARD OF EDUCATION OF THE CITY OF )

CHICAGO, ) Honorable 

) Sidney A. Jones,

Defendant-Appellee. ) Judge Presiding.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Michael Jacobson and Alvin Miller, individually and as class representatives, filed this action against defendant Board of Education of the city of Chicago (the Board), claiming they were deprived of their rights to continued employment, during a specific period, as principals in the Chicago public school system.  Plaintiffs appeal from the circuit court's grant of summary judgment in favor of the Board, denial of plaintiffs' motion for summary judgment, and denial of plaintiffs' petition for leave to file an amended complaint.

Prior to the enactment of public act 85-1418 (Pub. Act 85-1418, eff. May 1, 1989) (amending Ill. Rev. Stat. 1987, ch. 122, pars. 34-84 and 34-85) (public act 85-1418), principals at Chicago public schools were appointed by the Board pursuant to section 34-84 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 34-84)  (section 34-84).  Following successful completion of a three year probationary period, the principals became tenured employees.
(footnote: 1)  Pursuant to section 34-85 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 34-85) (section 34-85), a tenured principal could not be dismissed except for cause.
(footnote: 2)  Effective May 1, 1989, the legislature enacted public act 85-1418, purporting to amend sections 34-84 and 34-85 and eliminating tenure for principals.
(footnote: 3)
 Prior to May 1, 1989, plaintiffs allege, they were employed as principals in the Chicago public school system and had earned tenure pursuant to section 34-84.  After the enactment of public act 85-1418, plaintiffs were deemed to be serving under performance contracts which expired on June 30, 1990.  Plaintiffs were not offered contract extensions by their local school councils.
(footnote: 4)
 On November 30, 1990, the supreme court found public act 85-1418 unconstitutional in its entirety.  
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 566 N.E.2d 1283 (1990) (
Fumarolo
).
(footnote: 5)  On May 2, 1994, plaintiffs filed a one count complaint against the Board seeking damages because they were deprived of their rights to continued employment as principals and denied salary and other employment benefits for the 1990-1991 school year pursuant to action taken under a statute (public act 85-1418) which was held unconstitutional in its entirety by the supreme court.  The 
Fumarolo
 court recognized that plaintiffs had enforceable statutory rights to continued employment until such time as those rights were removed by a constitutionally valid legislative enactment, stating:

"An examination of the language of section 34-85 prior to its amendment shows that during the time that the statute was in effect, tenured principals 
were entitled to retain their positions
 until the age of compulsory retirement during good behavior and efficient service and that 
they could not be dismissed 
 except for cause.  
Fumarolo
, 142 Ill. 2d at 105 (emphasis added). 

The Board unsuccessfully moved to dismiss plaintiffs' complaint in June 1996.  The Board contended that plaintiffs were attempting to relitigate the issue of their lost tenure which was previously decided in 
Fumarolo
 and 
Pittman v. Chicago Board of Education
, 64 F.3d 1098 (7th Cir. 1995) (
Pittman
).  The Board filed a second motion to dismiss on the grounds that plaintiffs' claim was barred by the Local Governmental and Governmental Employee Tort Immunity Act (the Tort Immunity Act) (745 ILCS 10/1-101, 
et
 
seq
. (West 1998)).  Plaintiffs responded that their cause of action sounded in contract and, therefore, the Tort Immunity Act was inapplicable.  On June 6, 1997, the circuit court denied defendant's motion to dismiss as to plaintiff's claim sounding in contract only, but dismissed any claims sounding in tort. 

In June 1999, the circuit court ordered the Board to "answer plaintiffs (class) interrogatories pertaining to identification of class members, their salaries, benefits and other compensation, and other information relating thereto, on or before July 6, 1999."  In response to this order, on July 6, 1999, the Board sent a cover letter and an attached spreadsheet listing the names of 70 class members, their social security numbers and their salaries.
(footnote: 6)  Another spreadsheet, listing a smaller number of class members was filed by the Board on August 25, 1999.

The parties filed cross-motions for summary judgment.  The Board argued that because of the circuit court's June 6, 1997 order, plaintiffs could proceed only in contract and plaintiffs had not shown and could not demonstrate the existence of a contract between the parties.  Plaintiffs argued that the legal issues already had been decided in their favor and that the spreadsheet tendered by the Board on July 6, 1999, was a judicial admission as to the amount of damages they sustained.  The court entered a memorandum order and opinion granting the Board's motion for summary judgment and denying plaintiffs' motion for summary judgment.  

Within days after the foregoing decision was rendered, and relying upon section 2-1005(g) of the Code of Civil Procedure (735 ILCS 5/2-1005(g) (West 1998)) and 
Loyola Academy v. S & S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992) (
Loyola Academy
), plaintiffs moved for leave to amend their complaint.  The proposed amendment would have incorporated the same facts previously pled, and added three new theories, in three additional counts.  Plaintiffs' motion was denied. 

I

Plaintiffs first contend that the circuit court erred in granting the Board's motion for summary judgment.  Specifically, plaintiffs argue that their rights under sections 34-84 and 34-85 remained in effect because those sections were not repealed by the void and unconstitutional provisions of public act 85-1418.

A motion for summary judgment is properly granted if the pleadings, depositions and admissions on file, together with any exhibits and affidavits, when construed strictly against the moving party and liberally in favor of the opponent, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992) (
Outboard Marine
); 
Mitchell v. Jewel Food Stores
, 142 Ill. 2d 152, 568 N.E.2d 827 (1990).  A circuit court's decision granting summary judgment is reviewed 
de
 
novo
.  
Outboard Marine
, 154 Ill. 2d at 101.

When an act is held unconstitutional in its entirety, it is void 
ab
 
initio
.  
In re G.O.
, 191 Ill. 2d 37, 727 N.E.2d 1003 (2000); 
People v. Gersch
, 135 Ill. 2d 384, 553 N.E.2d 281 (1990) (
Gersch
).  The effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment.  
Gersch
, 135 Ill. 2d at 390.

The effect of the supreme court's decision in 
Fumarolo
, which held public act 85-1418 unconstitutional in its entirety, was to leave the law in force as it was before the adoption of the amendment.  Prior to the adoption of public act 85-1418, tenured principals could not be removed except for cause and after a hearing if one was timely requested in writing by the principal.  See Ill. Rev. Stat. 1987, ch. 122, par. 34-85.  The decision not to retain plaintiffs as principals did not follow this procedure.  Consequently, plaintiffs contend, they are entitled to recover the salary, pension and other employment benefits they lost for the limited period they were not retained as principals, in violation of sections 34-84 and 34-85.

The Board responds that the circuit court properly entered summary judgment in its favor because plaintiffs are unable to demonstrate the existence of a contract between them and the Board.  The Board maintains that the June 6, 1997 order entered by the court in this case, which stated that plaintiffs' action could proceed in contract only, was the law of the case.  Under that doctrine, a court is bound by its prior rulings of law in opinions or orders in the same case unless the facts require a different interpretation.  
Continental Insurance Co. v. Skidmore, Owings & Merrill
, 271 Ill. App. 3d 692, 648 N.E.2d 959 (1995).  The court agreed that the "primary issue in the case is whether plaintiffs can maintain a contract action against the defendants or whether plaintiffs can demonstrate the existence of a contract between the parties."  In finding that they could not, the court relied on 
Fumarolo
 and 
Pittman
.

The 
Fumarolo
 plaintiffs challenged the constitutionality of the Chicago School Reform Act (public act 85-1418), arguing that (1) the voting scheme for electing members of the local school councils violated the equal protection clauses of the federal and state constitutions and (2) by eliminating tenure for principals the legislation unconstitutionally impaired vested contract rights.  The supreme court found public act 85-1418 to be unconstitutional in its entirety because the voting scheme violated the equal protection clauses of the federal and state constitutions.  In dicta, the court considered the plaintiffs' contract argument.  The plaintiffs argued that the School Code established the basis of their contractual rights.  The court noted that "the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."  
Fumarolo
, 142 Ill. 2d at 104. The court found no indication in the language of the School Code  that the legislature intended to create vested contractual rights through enactment of the statute.  The court held that the plaintiffs "were entitled to the statutorily created status under section 34-84 on the conditions stated, but that they did not have a contractual right to continued employment."  
Fumarolo
, 142 Ill. 2d at 106.

In 
Pittman
, the amended act, enacted to rectify the constitutional infirmities in public act 85-1418, was challenged on the same basis as in 
Fumarolo
.  The court found that the original School Code, which initially granted tenure to principals, did not create a statutory contractual right to tenure.

Although in both 
Fumarolo
 and 
Pittman
, the issue was whether the principals who had earned tenure had vested rights to continued employment which could never be modified by the legislature, here plaintiffs' claim is based on the assertion that they were entitled to continued employment under sections 34-84 and 34-85 until their rights were changed by a constitutional statute.  Because public act 85-1418 was found unconstitutional in its entirety and thereby void 
ab
 
initio
, it never amended plaintiffs' rights under sections 34-84 and 34-85.  Unlike 
Fumarolo
 or 
Pittman
, this case deals with the employment relationship that existed between the Board and plaintiffs by virtue of the prior statute, and the benefits earned thereunder for which they have not been compensated, not whether that relationship ever could be terminated by repeal of that 

statute, as in 
Fumarolo
 and 
Pittman
.

Public employees are entitled to enforce the terms of their employment. 
Cannella v. Village of Bridgeview
, 284 Ill. App. 3d 1065, 673 N.E.2d 394 (1996); 
Carter v. State Board of Education
, 90 Ill. App. 3d 1042, 414 N.E.2d 153 (1980).  In 
Cannella
, the court ruled that defendant's acceptance of benefits from plaintiffs created an implied-in-law or quasi-contract for which the plaintiffs were entitled to compensation.  Plaintiffs here claim to have earned the rights to continued employment as a 
quid
 
pro
 
quo
 for their performance; however, they were denied this aspect of their compensation at a time when the rights plaintiffs held were not validly repealed.  In 
Carter
, plaintiff was held entitled to benefits because the Board failed to follow the law in existence at that time.  That is the point sought to be made here, that plaintiffs' rights to continued employment were not validly repealed by public act 85-1418, and plaintiffs were deprived of their rights to continued employment during the period the law recognized those rights as still valid.

According to the Board, plaintiffs' initial complaint references an employment relationship, but fails to state facts showing an offer, acceptance, consideration or certain and definite terms.  Pleadings must be liberally construed, however, and no pleading is bad in substance that contains such information as reasonably informs the opposite party of the nature of the claim that it is called upon to meet.  735 ILCS 5/2-603(c) (West 1998), 735 ILCS 5/2-612(b) (West 1998); 
Kapoor v. Robins
, 214 Ill. App. 3d 248, 573 N.E.2d 292 (1991).  
Village of Wadsworth v. Kerton
, 311 Ill. App. 3d 829, 726 N.E.2d 156 (2000).  Although plaintiffs' complaint lacks clarity, basic elements establishing their rights to relief have been pleaded sufficiently.  Plaintiffs implicitly alleged that the Board granted them tenured principal positions upon successful completion of a probationary period; they accepted those positions and, by successfully performing requisite services and completing the required probationary period, they earned tenure; and, as consideration for their services as principals to the Board, they received salaries, pension contributions and other benefits, including the rights to tenured employment unless dismissed for cause or upon compulsory retirement or, as in the case at bar, unless the legislature by valid statute terminated the tenure provisions. 

Plaintiffs here are not claiming that section 34-84 of the School Code itself created the contract and defined the terms of the employment relationship; rather, they assert, the statute authorized the parties to enter into a separate employment arrangement, which they did.  See 
State of Indiana, ex rel. Anderson v. Brand
, 303 U.S. 95, 82 L. Ed. 2d 685, 58 S. Ct. 443 (1938).  Unlike the issues decided in 
Fumarolo
 and 
Pittman
, the contractual nature of plaintiffs' cause of action does not arise directly out of the statute itself, but from the fact that the Board was statutorily authorized to and did create an employment relationship with plaintiffs.  During the time that the statutorily authorized tenure rights were in existence and not repealed, those terms continued to define the Board's employment relationship with the principals.  Plaintiffs' claim is not dependent upon a "vested" right which continued 
after
 the statute ultimately and effectively was repealed, but upon plaintiffs' employment relationship with the Board 
until
 repeal became effective.  Whether specifically labeled contract, employment rights, contract implied-in-fact, or quasi-contract, the relationship between the Board and the plaintiffs existed until constitutionally and validly repealed, and that relationship sounded in contract.

Significantly, in its answer to plaintiffs' initial complaint, the Board generally admitted the existence of an employment relationship between it and the plaintiffs; that plaintiffs earned rights to continued employment; and that under sections 34-84 and 34-85 the class plaintiffs could be dismissed only for just cause after a hearing.  These were judicial admissions.  
Board of Education of Township High School Dist. 205 v. Faculty Ass'n of Dist. 205
, 120 Ill. App. 3d 930, 458 N.E.2d 1017 (1983); 
American States Insurance Co. v. National Cycle, Inc.
, 260 Ill. App. 3d 299, 631 N.E.2d 1292 (1994).  Defendant's admission that such an employment arrangement existed establishes the contractual character of their claim because, as the Illinois Supreme Court has held, the employer-employee relationship is inherently contractually based:  

"Essential to the employer-employee relationship between Johnson and the claimant is the existence of an employment contract, express or implied.  In order to establish such a contract there must be at least an implied acquiescence by the employee in the relationship." (Citation omitted.)  
A.J. Johnson Paving Co. v. Industrial Comm'n
, 82 Ill. 2d 341, 350, 412 N.E.2d 477 (1980).  

See also 
DeHeer-Liss v. Friedman
, 227 Ill. App. 3d 422, 426, 592 N.E.2d 13 (1991), 
appeal denied
, 146 Ill. 2d 631, 602 N.E.2d 456 (1992) ("A contract of employment is formed when one party promises to render services in exchange for the other party's promise to pay wages"); 
Perlin v. Board of Education of the City of Chicago
, 86 Ill. App. 3d 108, 407 N.E.2d 792 (1980) (contract claim upheld based on established terms of employment and acceptance thereof by performance).  

Plaintiffs pled that they earned their tenure by completing the necessary probationary period to the satisfaction of the Board,  demonstrating the mutual assent required for contracts, and establishing an exchange, a 
quid
 
pro
 
quo
, for services rendered in return for salaries, pension contributions and other benefits, including the rights to continued employment as long as the terms of the employment remained in effect.  The entire relationship, as pled and admitted, was the promise to perform in return for the promise to pay, and clearly sounded in contract.

The circuit court erred in  entering summary judgment in favor of the Board. 

II

Plaintiffs next contend that the circuit court erred in denying their motion for summary judgment.  Specifically, plaintiffs argue that summary judgment as to liability should have been entered in their favor because they were entitled to the rights and benefits under section 34-84 and 34-85, which remained in effect when public act 85-1418 was held unconstitutional in its entirety, until a constitutionally valid statute took effect which terminated those earned rights and benefits.

The effect of public act 85-1418 being held unconstitutional in its entirety in 
Fumarolo
 was to leave the law in force as it existed prior to the adoption of the amendment.  See 
Gersch
, 135 Ill. 2d at 390.  The Board implicitly admitted in its answer to plaintiffs' initial complaint that prior to the enactment of public act 85-1418, principals in the Chicago public school system successfully completed a three year probationary period, that a principal who successfully completed the probationary period could not be removed except for cause, and that plaintiffs had successfully completed their respective probationary periods and earned benefits as principals.  Tenure ineluctably was among the benefits earned.

The rights and benefits to which plaintiffs were entitled did not end until public act 86-1477, which now validly terminated the previous appointment system, became effective on January 11, 1991.

The circuit court erred in failing to enter summary judgment in favor of plaintiffs on the issue of liability. 

III

Plaintiffs next contend that the Board's responses to plaintiffs' interrogatories should be deemed judicial admissions for purposes of damages.  Consequently, plaintiffs assert, because no genuine issue of material fact remains as to either liability or damages, summary judgment should be entered in their favor.  The Board maintains that their responses to plaintiffs' interrogatories are not judicial admissions.

A judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge.  
Hansen v. Ruby Construction Co.
, 155 Ill. App. 3d 475, 508 N.E.2d 301 (1987).  A party's answer to interrogatories may be a judicial admission.  See 
Van's Material Co. v. Department of Revenue,
 131 Ill. 2d 196, 545 N.E.2d 695 (1989) (
Van's
).

In June 1999, the circuit court ordered the Board to "answer Plaintiffs' interrogatories pertaining to identification of class members, their salaries, benefits and other compensation, and other information related thereto, on or before July 6, 1999."  The Board responded by sending a cover letter and an attached spreadsheet listing the names of 70 class members, their social security numbers and their salaries.
(footnote: 7)
 The July 6 letter and accompanying spreadsheet do not contain a positive, definite, deliberate or unequivocal statement that plaintiffs are entitled to this money as damages.  The letter explained that the information contained in the spreadsheet was based upon "the Board's current knowledge and information,"   alerting plaintiffs to the fact that the investigation was ongoing.  Further, a second spreadsheet, paring down the number of class members, was produced in August 1999.

The Board's responses to plaintiffs' interrogatories are not judicial admissions regarding damages under the foregoing circumstances.  A genuine issue of material fact remains regarding damages, precluding summary judgment on that issue, as the circuit court correctly held.

IV

Because summary judgment should have been granted in favor of plaintiffs on the issue of liability, plaintiffs' remaining argument as to amendment of pleadings need not be addressed.  Nevertheless, in the event plaintiffs seek to amend their complaint in order to conform their pleadings to subsequent proof, the circuit court is directed to consider such a motion on the merits of the proposed pleading.  735 ILCS 5/2-616(c) (West 1998), 735 ILCS 5-2-1005(g) (West 1998); 
Loyola Academy
, 146 Ill. 2d 263.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is reversed in part and affirmed in part, and this cause is remanded for proceedings consonant with this opinion.

Reversed in part, affirmed in part and remanded for further proceedings.

SOUTH and BARTH, JJ., concur.

FOOTNOTES
1:
Section 34-84 provided in pertinent part:

"Appointments and promotions of teachers, principals and other educational employees shall be made for merit only, and after satisfactory service for a probationary period of 3 years (during which period the board may dismiss or discharge any probationary employee upon the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools) appointments of teachers and principals shall become permanent, subject to: *** (3) removal for cause in the manner provided in Section 34-85."

2:
Section 34-85 provided in pertinent part:

"No teacher or principal appointed by the board of education shall (after serving the probationary period of 3 years specified in Section 34-84) be removed except for cause."

3:
Public act 85-1418 authorized the election of a local school council for each of the Chicago public schools.  Under the act, principals were employed under four year, renewable performance contracts.  The local school council was responsible for determining whether a principal's contract would be renewed.  Pursuant to public act 85-1418, the terms of persons currently serving as principals would expire on either June 30, 1990, or June 30, 1991, (the date to be determined by lottery), and unless a contract was offered by the local school council, the employment of those persons as principals terminated.

4:
The circuit court's December 16, 1997 order certifying the plaintiff class described the class as:

"All tenured principals who were deprived of their tenure and continuous service by the operation and effect of public act 85-1418, a statute held unconstitutional in its entirety, between April 15, 1990 and the date public act 86-1477 was enacted, January 11, 1991." 

5:
On January 11, 1991, the legislature enacted public act 86-1477) (Pub. Act 86-1477, eff. January 11, 1991 (amending Ill. Rev. Stat. 1987, ch. 122, pars. 34-84 and 34-85)) (public act 86-1477), an interim measure to ratify the actions taken in the 1990-1991 school year by the Board and the local school councils.  The legislature subsequently enacted public act 87-454 (Pub. Act 87-454, eff. September 11, 1991 (amending Ill. Rev. Stat. 1987, ch. 122, pars. 34-1.1, 34-2.1, 34-2.2, 34-2.4b, 34-2.5 and 34-3.1 and adding Ill. Rev. Stat. 1991 34-2.1b and 34-2.1c)), which amended the local school council election procedure to address the constitutional infirmities of public act 85-1418, which took effect September 11, 1991, and now is cited as 105 ILCS 5/34-1, 
et
 
seq
. (West 1998).

6:
On July 15, 1999, the Board sent an updated spreadsheet which included sick, vacation and personal day benefits for the 70 class members.  

7:
The July 6, 1999 cover letter stated in pertinent part:

"This letter responds to your June 16, 1999 letter and the court's order of June 22, 1999 concerning the Board's responses to the Plaintiffs' discovery in the above-referenced case.

* * *

The enclosed materials include a spreadsheet and a series of computer-generated data sheets.  The spreadsheet lists the names of the principals and their salaries at the time they were terminated.  Where possible, we have included the principals' social security numbers.  (The information concerning sick, vacation and personal day benefits will be included in a revised spreadsheet.)  Each of the computer-generated data sheets lists a principal's name and address.  With respect to pension contributions, the Board contributes seven (7)% of every employee's gross annual salary to that employee's pension fund.  Consequently, to determine the amount that each individual lost in pension contributions, one must look at the annual salary, determine the length of time in question (i.e. one year, six months, eighteen months), determine the salary for that time, and multiply the salary for that period of time by .07.

The principals included in the aforesaid materials are those individuals who, to the best of the Board's current knowledge and information, lost their principal positions between June 30, 1990 and January 11, 1991.  Accordingly, we have deleted the names of individuals who retired or took sick leave.  We have also deleted the names of individuals who were interim principals at the time in question, since the positions of these individuals were always intended to be short term.  Finally, we have deleted the names of individuals who left one principal position in June of 1990 but obtained another principal position at or prior to the beginning of the 1990-1991 school year, since these individuals did not sustain any damages as a result of the unconstitutional statute."